# 16-11693

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**NOE DAVALOS-COBIAN,**
Defendant-Appellant

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:16-CR-122-O-3

**BRIEF FOR THE UNITED STATES**

John R. Parker
United States Attorney

Emily Baker Falconer
Assistant United States Attorney
Texas Bar No. 24069694
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8822
emily.falconer@usdoj.gov

Attorneys for Appellee

## **STATEMENT REGARDING ORAL ARGUMENT**

The government agrees with appellant Davalos-Cobian that oral argument is unnecessary. This appeal presents a single, routine drug-quantity issue, which is controlled by binding precedent and can be resolved on the face of the short record. Thus, oral argument would not materially assist the Court.

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF JURISDICTION .......................................................... 1

STATEMENT OF THE ISSUE .................................................................. 1

STATEMENT OF THE CASE ................................................................... 1

    1.    Davalos pleads guilty to conspiring with others to distribute large quantities of methamphetamine imported from Mexico. .............. 1

    2.    The district court sentences Davalos to 262 months' imprisonment, based on a finding that he was responsible for distributing 6.27 kilograms of methamphetamine. ....................... 3

SUMMARY OF THE ARGUMENT .......................................................... 6

ARGUMENT AND AUTHORITIES ......................................................... 7

    The district court did not err, let alone clearly err, in determining the drug quantity attributable to Davalos ................................................... 7

        A.    The district court made a reasonable approximation of the quantity of drugs attributable to Davalos. .......................... 8

        B.    Any error was harmless. ................................................... 11

CONCLUSION ....................................................................................... 13

CERTIFICATE OF SERVICE ................................................................ 13

CERTIFICATE OF COMPLIANCE ....................................................... 14

## TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*United States v. Akins*, 746 F.3d 590 (5th Cir. 2014) ............................................ 7

*United States v. Alford*, 142 F.3d 825 (5th Cir. 1998) ...................................... 8, 9

*United States v. Betancourt*, 422 F.3d 240 (5th Cir. 2005) .............................. 7, 8

*United States v. Castro-Alfonso*, 841 F.3d 292 (5th Cir. 2016) .......................... 11

*United States v. Davis*, 76 F.3d 82 (5th Cir. 1996) ............................................... 7

*United States v. Ibarra-Luna*, 628 F.3d 712 (5th Cir. 2010) ............................... 11

*United States v. Njoku*, 737 F.3d 55 (5th Cir. 2013) .......................................... 11

*United States v. Richardson*, 713 F.3d 232 (5th Cir. 2013) ............................... 11

*United States v. Sanchez*, 850 F.3d 767 (5th Cir. 2017) .................................... 11

*United States v. Valencia*, 44 F.3d 269 (5th Cir. 1995) ........................................ 8

**Federal Statutes and Rules**

18 U.S.C. § 3231 .................................................................................................. 1

18 U.S.C. § 3742(a) ............................................................................................. 1

Fed. R. App. P. 4(b) ............................................................................................. 1

**Federal Sentencing Guidelines**

USSG § 2D1.1(a)(5) ............................................................................................. 8

USSG § 2D1.1(c) ............................................................................................ 8, 11

## STATEMENT OF JURISDICTION

This is a direct appeal from a sentence in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 18 U.S.C. § 3742(a). The sentencing hearing was held on November 28, 2016, (ROA.182–91), and Davalos timely filed the notice of appeal the same day, (ROA.123). *See* Fed. R. App. P. 4(b). The district court entered the judgment on November 30, 2016. (ROA.124–27.)

## STATEMENT OF THE ISSUE

Did the district court clearly err in determining the quantity of drugs attributable to Davalos for sentencing purposes? If so, was the error harmless given the court's pronouncement that it would have assigned the same sentence in any event?

## STATEMENT OF THE CASE

**1. Davalos pleads guilty to conspiring with others to distribute large quantities of methamphetamine imported from Mexico.**

Defendant-appellant Noe Davalos-Cobian conspired with a number of individuals to distribute methamphetamine. (*See generally* ROA.201–04.) Davalos, who worked for an unidentified person in Mexico, was responsible for coordinating the delivery of methamphetamine from the Mexican source to Estevan Sidon-Gonzalez for distribution, and for collecting drug proceeds from Sidon. (*See* ROA.201–02.) Davalos facilitated the shipment of liquid

methamphetamine to Sidon from a supplier in Mexico. (ROA.205.) At times, Davalos would travel from California to Fort Worth, Texas, to coordinate with the couriers who delivered methamphetamine to Sidon. (ROA.202.) Sidon in turn distributed the drugs to customers in Fort Worth and Terrell, Texas. (ROA.202.)

Task force officers (TFOs), working with the Drug Enforcement Agency, had been investigating Sidon and others since 2015. (ROA.201.) They became aware of Davalos in 2016, and in February, they learned through surveillance that Davalos was involved in Sidon's methamphetamine-distribution activities. (ROA.202–03.) TFOs intercepted a phone call in which an unidentified person told Sidon to pay Davalos $7,000 or $8,000 before Davalos left town, so he wouldn't have to return home "empty-handed." (ROA.202.) The telephone and in-person surveillance continued for several months and eventually led to Davalos's arrest in California. (ROA.204.)

A federal grand jury charged Davalos, Sidon, and two others with a single count of conspiracy to possess with intent to distribute methamphetamine. (ROA.55.) Davalos pled guilty without a written plea agreement. (*See* ROA.171–72.)

**2.    The district court sentences Davalos to 262 months' imprisonment, based on a finding that he was responsible for distributing 6.27 kilograms of methamphetamine.**

At sentencing, the presentence report (PSR) assigned Davalos a total offense level of 39, which comprised:

- a base offense level of 38 under USSG § 2D1.1 (for an offense involving 4.5 kilograms or more of methamphetamine (actual));

- a two-level increase for an offense involving the importation of methamphetamine;

- a two-level increase for being an organizer, leader, manager, or supervisor in the conspiracy; and

- a three-level downward adjustment for acceptance of responsibility.

(ROA.206–07.)  Based on a criminal-history category of I, his advisory guideline range was 262 to 327 months' imprisonment.  (ROA.210.)

The PSR explained in detail how the probation officer calculated the drug quantity attributable to Davalos.  (*See* ROA.204–05.)  Because investigating officers did not actually seize the liquid methamphetamine that Davalos imported, the drug quantity was calculated "based on [interecepted] telephone conversations regarding the money that Sidon-Gonzalez was to give Davalos Cobian or the couriers."  (ROA.204.)  Phone conversations revealed that Sidon gave Davalos or the couriers who worked for him a total of $54,500 on two occasions.  (*See* ROA.202–04.)  The recorded calls also revealed that

3

Sidon paid approximately $8,000 per kilogram of methamphetamine, so the probation officer calculated the total weight of the drugs by dividing:

$$\frac{\$54{,}500 \text{ (total amount of transactions)}}{\$8{,}000 \text{ (cost per kilogram)}} = 6.81 \text{ kilograms}$$

(*See* ROA.204–05.)  From this total quantity of methamphetamine supplied to Sidon by Davalos, the PSR then calculated the quantity of actual (pure) methamphetamine in the substance.  To do so, the PSR took the average purity percentage from 16 samples of seized methamphetamine that had been supplied by Sidon (and converted from the liquid that Davalos imported). (ROA.205.)  The average purity was 92.1%, so the PSR multiplied 6.81 * .921, for a total of 6.27 kilograms of methamphetamine (actual).  (ROA.205.)

Davalos filed written objections to the PSR, including an objection to the drug-quantity calculation.  (*See* ROA.214–18.)  He did not object to the PSR's attribution to him of 6.81 kilograms of methamphetamine, but he objected to "the use of *any* purity level for conversion to methamphetamine (actual)." (ROA.216 (emphasis added).)  He reasoned that he personally imported only liquid methamphetamine from Mexico, which he then supplied to Sidon, who

converted the liquid into crystal methamphetamine for distribution. (ROA.215.) He conceded that some of the methamphetamine that he supplied and that Sidon converted into crystal form "was seized and tested" and "averaged 92.1 percent pure." (ROA.215–16.) Yet he maintained that he cannot be sentenced based on that purity rate because there was no seizure of the actual liquid that was later converted into crystal form. (ROA.215–16.) Indeed, he argued that because the purity of the liquid he imported was not tested, it cannot be approximated, and he can be sentenced only for 6.81 kilograms of a mixture containing methamphetamine. (ROA.215–16.) Of course, if the court is not allowed to even approximate the purity of the methamphetamine Davalos imported, his maximum offense level would be 34. (*See* ROA.215–16.) The district court overruled his objection and adopted the findings set forth in the PSR. (ROA.184.)

The court ultimately sentenced Davalos to 262 months' imprisonment, at the low end of the guideline range. (ROA.186.) The court commented that:

> I believe this is the appropriate sentence, given all of the facts and the circumstances, and that this sentence is sufficient, but not greater necessary, to comply with the statutory purposes of sentencing. *In particular, given the sophisticated nature of the defendant's role in this case and given the expansive nature of the conspiracy as a whole, this is the sentence I otherwise would impose* because I believe this sentence serves the Court's objectives of appropriate punishment, deterrents, protection of the public, *so even if I'm wrong as to the objections, this is the sentence I otherwise would impose.*

(ROA.188 (emphasis added).)  This appeal of the court's drug-quantity finding followed.

## SUMMARY OF THE ARGUMENT

The district court did not clearly err in determining the drug quantity attributable to Davalos for sentencing purposes.  The court's drug-quantity determination is a factual finding, which this Court will disturb as clearly erroneous only if—based on the entirety of the evidence—it is left with the definite and firm conviction that a mistake has been committed.  The quantity of drugs attributed to a defendant need not be limited to drugs actually seized and can be based on estimate or approximation.  And a district court may adopt facts contained in the PSR without further inquiry if the facts have an adequate indicia of reliability and the defendant does not present competent rebuttal evidence.  Here, the district court properly adopted the drug-quantity total in the PSR because it had an adequate evidentiary basis.  Davalos failed to carry his burden to prove that the facts in the PSR were materially untrue, or to present any rebuttal evidence.  And even if he is correct that the drug quantity should have been calculated based on the purity of liquid, rather than crystalline, methamphetamine, his offense level would not change.

Moreover, even if this Court concludes that the drug-quantity finding was clearly erroneous, reversal is unwarranted because the alleged error was harmless.  At sentencing, the district court explicitly stated that, even if it was

mistaken about the drug-quantity objection, it would impose the same sentence for the same reasons. This Court has repeatedly affirmed sentences under the harmless-error doctrine in similar circumstances.

## ARGUMENT AND AUTHORITIES

**The district court did not err, let alone clearly err, in determining the drug quantity attributable to Davalos.**

### Standard of Review

Davalos preserved his drug-quantity challenge by objecting to the PSR's drug-quantity determination. (ROA.215–18.) A district court's calculation of the quantity of drugs involved in an offense is a factual finding that is entitled to considerable deference and will be reversed only if clearly erroneous. *See United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005). This Court will deem the district court's factual findings clearly erroneous only if, based on the entirety of the evidence, it is left with the definite and firm conviction that a mistake has been committed. *United States v. Akins*, 746 F.3d 590, 609 (5th Cir. 2014). "Under the clearly erroneous standard, if the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Davis*, 76 F.3d 82, 84 (5th Cir. 1996).

## Discussion

### A. The district court made a reasonable approximation of the quantity of drugs attributable to Davalos.

This Court should affirm Davalos's sentence because the district court reasonably approximated the quantity of drugs for which he was responsible. The base offense level for a drug-trafficking offense depends on the quantity of drugs involved in the offense. *See* USSG § 2D1.1(a)(5), (c). This Court has held that the quantity of drugs attributed to a defendant need not be limited to drugs actually seized and can be based on estimate or approximation. *See Betancourt*, 422 F.3d at 246–47. And, as a general matter, "[a] district court may adopt facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998). "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." *Id.* (quoting *United States v. Valencia*, 44 F.3d 269, 274 (5th Cir. 1995)).

Here, the district court did not err in adopting the PSR's drug-quantity total because it had an adequate evidentiary basis. Davalos concedes that the court properly attributed to him 6.81 kilograms of a *substance containing* methamphetamine, which was based on the dollar amount of transactions in which Davalos supplied methamphetamine to his coconspirator Sidon. (*See*

8

Brief at 9–14; ROA.202–05.)  The only dispute is whether the PSR then properly converted the 6.81 kilograms of methamphetamine mixture to a total of 6.27 kilograms of methamphetamine (actual).  (*See* Brief at 10–14.)  Davalos imported liquid methamphetamine from Mexico and sold it to Sidon, who then converted it into crystalline form for resale.  (*See* ROA.205.)  But no methamphetamine was seized from Davalos himself.  Thus, the PSR used the average purity of methamphetamine seized from Sidon's customers— methamphetamine that Sidon had converted from the liquid Davalos supplied to him.  (*See* ROA.205.)  The average purity of that seized methamphetamine was 92.1%, so the PSR multiplied 6.81 * .921, for a total of 6.27 kilograms of methamphetamine (actual).  (ROA.205.)

    Given that the seized methamphetamine was converted from the liquid supplied by Davalos, it was reasonable for the district court to consider it in calculating the drug quantity.  Davalos failed to carry his burden to prove that the facts in the PSR were "materially untrue," or to present any rebuttal evidence.  *See Alford*, 142 F.3d at 832.  Thus, the district court was entitled to rely on the facts in the PSR without further inquiry.  *See id.*

    Davalos argues that the district court should not have relied on the purity of the seized methamphetamine, even though he concedes that it was converted from the liquid he provided.  (*See* Brief at 9–14; ROA.215–16.)  He

argues that there was "no indication" that "the purity of the crystallized methamphetamine . . . was representative of the purity of the liquid methamphetamine base." (Brief at 13.) But this is incorrect. The seized methamphetamine was the *same* methamphetamine as the liquid base he supplied, just in a different form. (ROA.205.) He provided no rebuttal evidence or even argument to show that the purity level of methamphetamine somehow increases significantly when converted to crystalline form. Moreover, he neglects that two of the samples of methamphetamine seized and used to calculate the purity percentage were themselves at least partially liquid. (*See* ROA.222–23 (lab reports indicating the purity level of seized methamphetamine that was a "crystalline/liquid mixture").)

Even if Davalos is correct that the drug quantity should have been calculated based on the purity of liquid, rather than crystalline, methamphetamine, his offense level would not change. The two partial liquid samples used to calculate his offense level had purity rates of 76% and 58.5%, for an average purity of 67.25%. (ROA.222–23.) Multiplied by the 6.81 kilograms of methamphetamine mixture for which he was responsible, this yields a total of 4.57 kilograms of methamphetamine (actual). And that number still exceeds the 4.5 kilogram threshold for his offense level of 38. See

USSG § 2D1.1(c). Thus, the district court did not err, let alone clearly err, in sentencing him for a drug quantity of 4.5 kilograms or more.

### B.   Any error was harmless.

Even if the drug-quantity finding was erroneous, reversal is unwarranted because any error was harmless. This Court has held that a sentencing error is harmless where the district court "explicitly state[s] that it would give the same sentence even if the [allegedly erroneous] enhancement did not apply." *United States v. Njoku*, 737 F.3d 55, 77–78 (5th Cir. 2013). More specifically, a procedural sentencing error is harmless where the district court states that it "'would have imposed the same sentence for the same reasons, regardless of an erroneous Guidelines calculation.'" *United States v. Sanchez*, 850 F.3d 767, 769 (5th Cir. 2017) (quoting *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010)). In *Sanchez*, the Court held that an alleged sentencing error was harmless in light of the district court's comment that "to the extent that I erred in the application of the enhancement . . . , the sentence would still be the same." *Id.* (internal quotation marks omitted). This Court has previously held that "similar statements during sentencing provide sufficient basis to conclude that any potential error resulting from an improperly calculated Guidelines range is harmless." *Id.* (citing *United States v. Castro-Alfonso*, 841 F.3d 292, 298–99 (5th Cir. 2016); *United States v. Richardson*, 713 F.3d 232, 237 (5th Cir. 2013)).

Here, the court made a comment almost identical to the one that rendered any sentencing error harmless in *Sanchez*. "[E]ven if I'm wrong as to the objections," the court held, "this is the sentence I otherwise would impose." In this case, the court provided even more proof of harmlessness, explaining that its sentence would be the same because "the sophisticated nature of the defendant's role in this case and given the expansive nature of the conspiracy as a whole." (ROA.188.) The Court also specifically referred to "the Court's objectives of appropriate punishment, deterren[ce], [and] protection of the public" and reiterated twice that "this is the sentence I otherwise would impose," for those reasons. (ROA.188.) Thus, under this Court's long-established precedent, the alleged error in this case is harmless. Affirmance is required in light of the court's clear indication that—regardless of the correctness of its drug-quantity finding—it would have imposed the same 262-month sentence for the same reasons. The Court should affirm the sentence.

## CONCLUSION

This Court should affirm the judgment.

        Respectfully submitted,

        John R. Parker
        United States Attorney

        */s/ Emily Baker Falconer*
        Emily Baker Falconer
        Assistant United States Attorney
        Texas Bar No. 24069694
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242
        Telephone: (214) 659-8822
        emily.falconer@usdoj.gov

        Attorneys for Appellee

## CERTIFICATE OF SERVICE

I certify that this document was served on Davalos-Cobian's attorney, Francisco Hernandez, through the Court's ECF system on June 7, 2017, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

        */s/ Emily Baker Falconer*
        Emily Baker Falconer
        Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,568 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*/s/ Emily Baker Falconer*
Emily Baker Falconer
Assistant United States Attorney
Date: June 7, 2017